IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

SHARON ROHRBACH, GARY ROHRBACH,
and SAURA ROHRBACH, a minor, by
her parents and natural guardians,
SHARON and GARY ROHRBACH,
DEAN OBERST, DEBORAH OBERST,
and RYAN OBERST, a minor,
by his parents and natural
guardians, DEAN and DEBORAH OBERST,
THOMAS ROCK AND DOROTHY ROCK,
and CHESTER CENZAR and KATHERINE
CENZAR,

        Plaintiffs,

       v.

AT&T NASSAU METALS CORPORATION,
C & D RECYCLING, INC.,
LURGAN CORPORATION, JOSEPH
BENNER, and AMERICAN TELEPHONE
TELEGRAPH CO.
        Defendants.

**3: CV-89-1268**

CIVIL ACTION NO.

**JURY TRIAL DEMANDED**

FILED
SCRANTON

AUG 31 1989

DONALD ___ ___
PER _____
DEPUTY CLERK

## COMPLAINT

Plaintiffs, by their attorneys, bring this action for response costs, compensatory and punitive damages and equitable relief, and allege as follows:

### PARTIES

1. This is an action by residents of Foster Township, Luzerne County, Pennsylvania, who have suffered contamination of their residences and their persons and other injuries due to migration of contaminants and hazardous substances from a nearby facility. Plaintiffs seek to obtain legal redress against owners and users of the facility. It is brought under the Comprehensive Environmental Response Compensation and Liability Act, the Racketeering Influenced and Corrupt Organizations Act ("RICO"),

Pennsylvania's Hazardous Sites Cleanup Act, and Pennsylvania's common law.

2.   Plaintiffs Sharon and Gary Rohrbach, and Saura Rohrbach, their child, reside at R.D. Box 1509, Freeland, Pa. 18224.

3.   Plaintiffs Dean and Deborah Oberst, and Ryan Oberst, their child, reside at R.D. Box 1509-B, Freeland, Pa. 18224.

4.   Plaintiffs Thomas and Dorothy Rock reside at R.D. Box 1509-C, Freeland, Pa. 18224.

5.   Plaintiffs Chester and Katherine Cenzar reside at R.D. Box 1509-A, Freeland, Pa. 18224.

6.   (a) Defendant AT&T Nassau Metals Corporation ("AT&T Nassau") is a corporation with offices at Tottenville Place, P.O. Box 218, Gaston, South Carolina 29053. AT&T Nassau conducted the business of reclaiming lead and copper from telephone cable in this Commonwealth, including at the location herein referred to as the "C&D site" or the "Site". AT&T Nassau has also conducted the business herein alleged as "Nassau Recycle Corp."

(b) Defendant C & D Recycling, Inc. ("C&D") is a Pennsylvania corporation authorized to do business in Pennsylvania having a business office at R.D. #2, Route 940, Freeland, Pa. 18224 (the "C&D Site"), and/or 86 Wilson Street Hazleton, Pa. 18201, and which conducted the business of reclaiming lead and copper at the C&D Site.

(c) Defendant Lurgan Corporation ("Lurgan") is a Pennsylvania corporation authorized to do business in

2

Pennsylvania with offices at 58 E. 4th Street, Emporium, Pa. Lurgan conducted the business of reclaiming lead and copper at the location herein referred to as the "C&D Site"   .

(d) Defendant Joseph Benner ("Benner"), is sued individually and as principal and agent of his instrumentality and vehicle, C & D.  He resides at 86 Wilson Street, Hazleton, Pa.  18201.

(e) Defendant American Telephone & Telegraph Co. ("AT&T") is a New York corporation with its principal office at 550 Madison Avenue, New York, NY  10022.  Upon information and belief, AT&T conducted the business of reclaiming lead and copper from telephone cable in this Commonwealth through its subsidiary or division AT&T Nassau.

### JURISDICTION

7.   Jurisdiction over this action is conferred by 28 U.S.C. Section 1331, which provides that district courts shall have original jurisdiction of all civil actions arising under the laws of the United States, in that plaintiffs assert claims under the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. Section 9601 et seq.  This Court has pendent jurisdiction over the state law claims, in that the state and federal claims arise out of a common nucleus of operative facts.   Damages exceed $50,000.00 exclusive of interest and costs.

## STATEMENT OF FACTS

8. This case concerns the migration and threatened migration of hazardous substances from the site of defendants' operations, the "C&D Recycling Site", and onto plaintiff's properties and into plaintiffs' bodies.

9. The "C&D Recycling Site" (hereinafter "the Site") is located in a rural setting in Foster Township, Luzerne County, Pennsylvania, between the town of Hazelton and the Borough of White Haven. The site covers 50 to 70 acres and includes an incinerator with a stack 50 to 75 feet high, an office building, and several wooden buildings, including a barn and a farmhouse. Piles of wire from recovery operations litter the site. Nearby residents use wells for their primary drinking water supply. A cyclone fence at the entrance to the site limits access, but the fence does not surround the site.

10. The Site is an inactive facility where metal was recovered from telephone cables from the mid-1960's. The Site was owned and operated by defendants during all times pertinent hereto. Operations at the Site from the 1960's included recycling large amounts of telephone cable sent by defendants AT&T Nassau and AT&T (hereinafter "the AT&T defendants") to the Site which contained copper, cased in lead, stripping the copper through a burning process.

11. In the mid-1960s the Site was owned by Lurgan which operated a primitive lead recycling/secondary smelting facility. The AT&T defendants' lead-sheathed copper cables were cut into

4

pieces and burned to melt off the lead.  Burning was done in open pits and the hot cables were washed outside.  C&D Recycling purchased the Site in 1979 and continued the smelting and recycling operations.  Upon information and belief, C & D acquired all of the legal obligations and liabilities of Lurgan. In addition to the lead salvaging process, PVC and plastic wire coatings were also removed from cables during this time and burned.  Upon information and belief, the AT&T defendants retained ownership of these hazardous materials throughout their processing at the site.  Although the defendants were required by the Pennsylvania Department of Environmental Resources ("DER") to use an incinerator with an afterburner, defendants continued to burn in outside pits, and the afterburner was not in actual operation until 1982, and never complied with environmental regulations.  Black smoke from Site operations invaded plaintiffs' premises and would obstruct traffic on a nearby township road at times.

12. From prior to 1984 until at least August 31, 1987 defendants collaborated and conspired to conceal the interest and involvement of the AT&T defendants with activities at the site from the public.

13. At all times relevant hereto, the defendants conducted the aforesaid activities at the site in knowing violation of environmental laws, and with knowledge that the operations would cause harm to the environment and would threaten plaintiffs with exposure to hazardous and toxic contaminants.

5

14.  In 1984, when the owners of C&D Recycling attempted to sell the facility to a radioactive waste disposal company, DER sampled water and soil samples on-site and found high levels of lead.

15.  In April 1985, testing done at the C&D Recycling Site showed that on-site wells were contaminated with arsenic.  Soil sampling done on-site during April 1986 revealed high lead and copper levels in the ash piles, burn pit, and drainage pathways on the Site.

16.  Subsequent on-site groundwater samples show dangerous lead and copper concentrations ranging from 1,298,000 ppb to 716,028,000 ppb of lead and 393,000 to 105,656,000 ppb of copper. Off-site samples also showed an elevated and dangerous level of lead in the surface soil.

17.  During all times pertinent hereto, the Site, including elevated areas where dangerous levels of lead and copper were found was not stabilized for erosion and sedimentation control which allowed unrestricted migration of soils and contaminants from the Site due to erosion, sedimentation and percolation. Migration of contaminants has occurred from surface runoff including via erosion channels and otherwise into the groundwater and into the groundwater supply of the plaintiffs.  Private residences including the plaintiffs' are located within one-quarter mile of the Site.

18.  Because the Site is located topographically higher than plaintiffs' residences, groundwater and runoff flows from the

Site toward plaintiffs' residences.

19. Particulate lead and other contaminants have also migrated through the air in smoke, dust and dirt from the Site onto plaintiffs' properties, and has percolated onto their groundwater.

20. The Site is on the National Priorities List as established by Section 105(8) of CERCLA, 42 U.S.C. Section 9605(8). See 52 Fed. Reg. 27620 (July 22, 1987).

21. C & D and/or the AT&T defendants have evacuated over 44,000 lbs. of lead-containing material from the Site under the supervision of DER.

22. Subsequent to DER's discovery of contamination at the Site, DER discovered 7.1 ppb of lead in the Rohrbachs' water and 1630 ppb of copper, and thereafter lead levels as high as 94 ppb 126, 130 and 150 ppb, and such contamination, in varying amounts, continues to the present time.

23. The Rohrbach, Rock and Oberst plaintiffs have discovered lead contamination from the site in soils on their properties and in their vegetable gardens at levels of 99,240 ppb, 108,080 ppb and 85,220 ppb, respectively. Other contaminants from the Site have been detected in the Rohrbachs', Rocks' and Obersts' water and soil, in minor Ryan Oberst's body, in Dorothy Rock's body, in the Rohrbachs' horse and garden vegetables and in the Rocks' and Obersts' well water.

24. On March 5, 1985 Pa. DER denied that Rohrbachs' lead contamination was from the C&D site.

25. From 1985 to present, the AT&T defendants and their agents have denied any knowledge of contamination problems, denied their role in causing same, represented to the plaintiffs that their lead levels are caused by their own plumbing or are simply "background" levels, deceptively mismeasured "background" levels and otherwise misled plaintiffs and neighboring residents as to responsibility of the site's operations for off-site contamination.

26. On August 31, 1987 a consent decree between AT&T Nassau and the U.S. EPA was distributed to government officials, which linked AT&T to the site and off-site lead contamination problems.

27. As a result of the aforesaid use of the site and tortious and culpable acts and omissions of the defendants, dangerous levels of metals volatile organic materials, toxic chemicals, and other hazardous wastes, and their various breakdown products, have escaped in significant quantity from the Site, and have appeared in streams, surface waters, groundwater, crops, animals, land and air in the vicinity of the Site and the plaintiffs' residences, and in plaintiffs' bodies. Among contaminants that have escaped from the Site and appeared in significant concentrations within the plaintiffs' residences are:

lead

arsenic

copper

cadmium

aluminum

8

28. In addition to the aforementioned chemicals, other dangerous contaminants, including some which are listed as hazardous substances under CERCLA, among others, have been detected in significant quantities at the site, and therefore face plaintiffs with threatened migration.

29. Even if closure and protective measures are taken, the level of contamination in said vicinity will continue to increase as the contamination continues to spread through the air, soils and aquifers underlying the site and surrounding area.

30. As a result of defendants' unlawful and tortious activities, as alleged above, plaintiffs have suffered violence to their persons and serious damage to their property.

31. The contamination rendered the plaintiffs' residences uninhabitable unless full remediation of the site and of contamination on their properties is undertaken.

32. The contamination destroyed the value of the plaintiffs' residences and rendered these residences worthless and unsalable for residential purposes.

33. The contamination has caused and/or aggravated physical illnesses on the part of all members of the Rohrbach Family, Rock Family, Oberst Family, and Cenzar Family. This includes manifest physical symptoms suffered inter alia, by Mrs. Rohrbach, Mr. and Mrs. Rock, Mrs. Oberst and Ryan Oberst, and Mrs. Cenzar.

34. The contamination has caused severe emotional and psychological harm to all members of the plaintiffs' families, including, but not limited to, the following:

a.   Severe fright, fear, shock and emotional upset;

b.   Constant tension and anxiety;

c.   Severe headaches and hives;

d.   Emotional anxiety associated with parental fears for the health, safety and welfare of the infant plaintiffs;

e.   Emotional anxiety associated with fears for the health, safety and welfare of close family members;

f.   Grave fear and uncertainty on the part of each plaintiff about his or her own physical and emotional health;

g.   Loss of enjoyment of each other's consortium, company, health and well-being;

h.   Loss of enjoyment of the company of numerous friends, who refuse to visit plaintiffs at the residences; and

i.   Fear of personal contamination and disease as a result of having eaten food grown on land now known to be contaminated.

35.   Plaintiffs' damages are continuing in nature, and continue to increase.

36.   Plaintiffs have undergone exposure to dangerous toxic substances, with a resulting increased risk of cancer and other diseases, and they live with constant fear and anxiety for their personal health, including that of the children in the family.

37.   Plaintiffs have incurred the need for permanent medical surveillance to monitor for risks and diseases caused by exposure to the aforesaid contaminants.

38.   Plaintiffs have suffered great inconvenience, loss of use and enjoyment of property, and increased costs as a result of said contamination, including, for each of the plaintiffs,

installation of water purifying systems and other costs.

## COUNT ONE - CERCLA

### COSTS OF RESPONSE

39.  Paragraphs 1 through 38 are incorporated by reference as if fully set forth herein.

40.  Lead, cadmium, arsenic and copper are hazardous substances as defined in CERCLA 101(14), 42 U.S.C. Section 9601(14).

41.  Defendants AT&T Nassau and AT&T arranged to have material, which contained hazardous substances, transported to the Site for treatment and disposal.  Some or all of said material containing hazardous substances and sent to the Site was generated by the AT&T defendants.

42.  Defendants Lurgan, C&D and Benner operated the site and disposed of hazardous substances at the site.

43.  The Site is a "Facility" as defined by Section 101(9) of CERCLA, 42 U.S.C. Section 9601(9).

44.  The past, present, and/or potential migration of hazardous substances from the Site constitutes an actual and/or threatened "release" as defined in Section 101(22) of CERCLA, 42 U.S.C. Section 9601(22).

45.  The actual and/or threatened release of hazardous substances from the Site into the environment due to erosion and sedimentation via surface water and other migration may present an imminent and substantial endangerment to the public health, welfare or the environment.

11

46. Because of the aforesaid release or threat of release, plaintiffs have incurred and will incur costs of response not inconsistent with the National Contingency Plan; including, but not limited to: costs of filters, costs of sampling, increased costs of travel and electricity, alternative water supplies, and costs of medical monitoring.

## COUNT TWO - PENNSYLVANIA SUPERFUND
## (HAZARDOUS SITES CLEANUP ACT

### COSTS OF RESPONSE

47. Paragraphs 1 thorough 46 are incorporated by reference as if fully set forth herein.

48. Lead, cadmium, arsenic and copper are contaminants and are hazardous substances as defined in the Hazardous Sites Cleanup Act, 35 P.S. Section 6020.103.

49. Defendants AT&T Nassau and AT&T arranged to have material, which contained hazardous substances and contaminants, transported to the Site for treatment and disposal.

50. Defendants Lurgan, C&D and Benner disposed of hazardous substances and contaminants at the site.

51. The Site is a "Site" and the defendants are "Responsible persons" as defined by the Act, 35 P.S. Section 6020.701.

52. The past, present, and/or potential migration of hazardous substances and contaminants from the Site constitutes an actual and/or threatened "release" and a nuisance as defined in the Act, 35 P.S. Sections 6020.103, .507 and .701.

53. The actual and/or threatened release of hazardous substances and contaminants from the Site into the environment due to erosion and sedimentation via surface water and other migration presents substantial danger to the public health, safety or the environment.

54. Because of the aforesaid release or threat of release, plaintiffs have incurred and will incur reasonable and necessary or appropriate costs of response for which defendants are strictly liable under the Act, 35 P.S. Sec. 6020.702., including, but not limited to: costs of filters, costs of sampling, increased costs of travel and electricity, alternative water supplies, and costs of medical monitoring.

## COUNT THREE - RICO

55. Paragraphs 1 through 54 are hereby realleged as if fully set forth herein.

56. In furtherance of a collective enterprise and conspiracy to reprocess and sell copper while avoiding responsibility for the pollution caused, defendants have on two or more occasions and in a long series of transactions within the last ten years caused written communications to be sent via the United States Mails, in violation of 18 U.S.C. Section 1341 (mail fraud). By way of example, and not of limitation, the defendants misrepresented to federal, state and local officials and through them to plaintiffs the extent of environmental violations at the site, the extent of environmental plans to abate (or not to

13

abate) the environmental contamination there, and the extent of environmental contamination at the site, and the responsibility of the defendants, including the AT&T defendants, for the contamination. These acts had the intended effect of procuring opportunity for continued operation and profits while the defendants acted in violation of environmental laws. The precise dates of such mailings are not known to plaintiffs at the present stage of discovery, but are within the exclusive knowledge of defendants.

57. These repeated violations of 18 U.S.C. Section 1341 and of Pennsylvania state law constitute a pattern of racketeering activity within the meaning of 18 U.S.C. Section 1961.

58. All defendants herein were participants in one or more collective enterprises. Said collective enterprises have been managed on an ongoing rather than an _ad_ _hoc_ basis. On information and belief, decisions concerning the affairs of these collective enterprises were made consensually. Said collective enterprises were engaged in, and/or the activities have affected, interstate commerce.

59. In addition, each defendant entity herein, i.e. AT&T Nassau, AT&T, C&D and Lurgan, has itself been at all relevant times an "enterprise" engaged in, and/or whose activities affect, interstate commerce. Each of the defendants has used or invested proceeds from one or the other of the aforesaid collective enterprises in the operation of one or more of these discrete enterprises, in violation of 18 U.S.C. Section 1962(a); and/or

14

has conducted or participated, directly or indirectly, in the conduct of one or more of said discrete enterprises' affairs through a pattern of racketeering activity, in violation of 18 U.S.C. Section 1962(c), and/or has conspired to violate, 18 U.S.C. Section 1962(a) and/or (c) in violation of 18 U.S.C. Section 1962(d).

60. Defendant AT&T Nassau has at all relevant times been a "person" which, acting through its principals and agents, invested in itself as an "enterprise" proceeds of the conduct of business in violation of environmental laws, derived in part through the racketeering activities of itself and other participants in the collective enterprises and conspiracies. In addition, AT&T Nassau has at all relevant times been a "person" participating in and conducting its own affairs through a pattern of racketeering activity, and a "person" associated with and conducting and participating in the affairs of said collective enterprise and conspiracy through a pattern of racketeering activity, as more fully alleged above.

61. Defendant C&D has at all relevant times been a "person" which, acting through its principals and agents, invested in itself as an "enterprise" proceeds of the conduct of business in violation of environmental laws, derived in part through the racketeering activities of itself and other participants in the collective enterprises and conspiracies. In addition, C&D has at all relevant times been a "person" participating in and conducting and participating in its own affairs through a pattern

15

of racketeering activity, and a "person" associated with and conducting the affairs of said collective enterprise and conspiracy through a pattern of racketeering activity, as more fully alleged above.

62.   Defendant Lurgan has at all relevant times been a "person" which, acting through its principals and agents, invested in itself as an "enterprise" proceeds of the conduct of business in violation of environmental laws, derived in part through the racketeering activities of itself and other participants in the collective enterprises and conspiracies.  In addition, Lurgan has at all relevant times been a "person" participating in and conducting its own affairs through a pattern of racketeering activity, and a "person" associated with and conducting and participating in the affairs of said collective enterprise and conspiracy through a pattern of racketeering activity, as more fully alleged above.

63.   Defendant AT&T has at all relevant times been a "person" which, acting through its principals and agents, invested in itself as an "enterprise" proceeds of the conduct of business in violation of environmental laws, derived in part through the racketeering activities of itself and other participants in the collective enterprises and conspiracies.  In addition, AT&T has at all relevant times been a "person" participating in and conducting and participating in the affairs through a pattern of racketeering activity, and a "person" associated with and conducting the affairs of said collective

enterprise and conspiracy through a pattern of racketeering activity, as more fully alleged above.

64. Defendant Benner was at all relevant times a "person" associated with and participating in and conducting the affairs of defendant C&D as an "enterprise" and participating in and conducting the affairs of the collective enterprise and conspiracy alleged, as more fully alleged above.

65. The individual and corporate defendants conspired among themselves and with each other to violate 18 U.S.C. Section 1962(a) and (c), in violation of 18 U.S.C. Section 1962(d).

66. By reason of the aforesaid violations of 18 U.S.C. Sections 1962(a), (c) and (d), the plaintiffs have been injured in their persons and property within the meaning of 18 U.S.C. Section 1964 (c) in that they have suffered, are suffering, and will continue to suffer, _inter alia_, the following foreseeable losses and damages:

    (a)   permanent injury to land;

    (b)   total lost of market value of their property, in that their house is unsalable;

    (c)   loss of the use of real property;

    (d)   individual and familial suffering due to the deprivation of the peaceful use and comfortable enjoyment of property;

    (e)   individual and familial suffering due to the inconvenience, personal discomfort, and annoyance, as well as the distinct injuries to health and property;

(f)   present and manifest injuries to physical and mental health, including but not limited to present emotional distress resulting from the knowledge of exposure to the risk of cancer;

(g)   present and latent injuries to physical and mental health;

(h)   expenses incurred by reason of illness caused by the Site and nuisance;

(i)   unauthorized and repeated exposures to, and impacts from, toxic materials in air, food and water, as well as threats of same;

(j)   other consequential, incidental and special damages.

67.   Pursuant to 18 U.S.C. Section 1964(c), plaintiffs are entitled to recover treble damages, costs and reasonable attorneys' fees as compensation for their property damages resulting from defendants' conspiracies and unlawful activities.

## COUNT FOUR - NEGLIGENCE

68.   The allegations of paragraphs 1 through 67 are hereby realleged as if fully set forth herein.

69.   Defendants jointly and severally acted negligently causing and contributing to release of hazardous substances and are liable to the plaintiffs for the personal and property damages they have suffered as a proximate result thereof, and for punitive damages.

## COUNT FIVE - STRICT LIABILITY

70.   The allegations of paragraphs 1 through 69 are hereby realleged as if fully set forth herein.

71. In generating, transporting and disposing of hazardous substances in the vicinity of plaintiffs' residences, defendants jointly and severally were engaged in an ultra-hazardous and abnormally dangerous activity.

72. Defendants are accordingly jointly and severally strictly liable to plaintiffs for the personal and property damages they have sustained, as set forth more fully above, as a result of the activities herein before alleged and for punitive damages.

### COUNT SIX - NUISANCE

73. The allegations contained in paragraphs 1 through 72 hereof are hereby realleged as if fully set forth herein.

74. The defendants' joint and several conduct alleged above constitute a threat to, have injured, and continue to injure plaintiffs' health, safety, and property, and the use and enjoyment of their property, and constitute a public and private nuisance. Moreover, the special damage suffered by plaintiffs differs in kind from that suffered by the public at large.

### COUNT SEVEN - TRESPASS

75. The allegations contained in paragraphs 1 through 74 hereof are hereby realleged as if fully set forth herein.

76. The actions of the defendants' joint and several conduct alleged above constituted a trespass onto plaintiff's property, causing damage.

## COUNT EIGHT - INTENTIONAL INFLICTION OF
## MENTAL AND EMOTIONAL DISTRESS AND INJURY

77. The allegations contained in paragraphs 1 through 76 are hereby realleged as though fully set forth herein.

78. As a result of defendants' joint and several intentional conduct, as alleged herein, there occurred as a direct, foreseeable, and intended consequence, the infliction of mental and emotional distress and injury upon plaintiffs.

79. Defendants jointly and severally knew that by defendants' actions plaintiffs would suffer the mental and emotional distress caused by both the drinking of water and breathing of air polluted with carcinogenic and otherwise harmful chemicals and the knowledge -- for the remainder of plaintiffs' lives -- that they, their family, and their progeny will suffer an elevated risk of contracting cancer and other chemically induced diseases, as a result of exposure to the site and its harmful contents.

80. Defendants jointly and severally knew that their activities as alleged herein would give rise to the aforementioned exposures, or the reasonable fear and apprehension of the same by plaintiffs, and are liable jointly and severally to plaintiffs for compensatory and punitive damages.

## COUNT NINE - NEGLIGENT INFLICTION OF
## MENTAL AND EMOTIONAL DISTRESS AND INJURY

81. The allegations contained in paragraphs 1 through 53 are hereby realleged as though fully set forth herein.

82. As a result of defendants' joint and several activities, as alleged herein, there occurred as a direct and foreseeable consequence, the infliction of mental and emotional distress and injury upon plaintiffs, and defendants are accordingly liable to plaintiffs for compensatory and punitive damages.

WHEREFORE, ON COUNT ONE, plaintiffs claim compensation for all response costs incurred from defendants jointly and severally, a declaration that defendants shall be jointly and severally liable of all future costs of response plus the creation and maintenance of a medical monitoring fund; and

ON COUNT TWO, plaintiffs claim compensation for all response costs incurred from defendants jointly and severally, a declaration that defendants shall be jointly and severally liable of all future costs of response plus the creation and maintenance of a medical monitoring fund; and

ON COUNT THREE, plaintiffs claim compensatory and treble damages from defendants jointly and severally, for their personal and property injuries in an amount exceeding $50,000 plus costs and reasonable attorneys fees, and the creation and maintenance of a medical monitoring fund; and

ON COUNT FOUR, plaintiffs claim compensatory and punitive damages from defendants jointly and severally, for their personal and property injuries in an amount exceeding $50,000 plus costs and reasonable attorneys fees, and the creation and maintenance of a medical monitoring fund; and

21

ON COUNT FIVE, plaintiffs claim compensatory and punitive damages from defendants jointly and severally, for their personal and property injuries, in an amount exceeding $50,000.00 plus costs and reasonable attorneys fees, and the creation and maintenance of a medical monitoring fund; and

ON COUNT SIX, plaintiffs pray that the Court order defendants to abate the nuisance caused by their actions at the site, and claim compensatory and punitive damages from defendants jointly and severally, for their personal and property injuries, in an amount exceeding $50,000.00 plus costs and reasonable attorneys fees, and the creation and maintenance of a medical monitoring fund; and

ON COUNT SEVEN, plaintiffs claim compensatory and punitive damages from defendants jointly and severally, for their personal and property injuries, in an amount exceeding $50,000.00 plus costs and reasonable attorneys fees; and

ON COUNT EIGHT, plaintiffs claim compensatory and punitive damages from defendants jointly and severally, for their personal and property injuries, in an amount exceeding $50,000.00 plus costs and reasonable attorneys fees, and

ON COUNT NINE, plaintiffs claim compensatory and punitive damages from defendants jointly and severally, for their personal and property injuries, in an amount exceeding $50,000.00 plus costs and reasonable attorneys fees.


_____
ROBERT J. SUGARMAN


_____
JOHN A. MOORE, JR.

Counsel for plaintiff

OF COUNSEL:

SUGARMAN & ASSOCIATES
16th Floor, City Place
101 North Broad Street
Philadelphia, PA   19107

c:\temp.828

23

JS 44C
(Rev. 11/82)

**CIVIL COVER SHEET**

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (For more detailed instructions, see separate instruction sheet.)

**PLAINTIFFS**

Sharon Rohrbach, Gary Rohrbach, Saura Rohrbach, Dean Oberst, Deborah Oberst, Ryan Oberst Thomas Rock, Dorothy Rock, Chester Cenzar and Katherine Cenzar

(Addresses on Complaint)

**DEFENDANTS**

AT&T Nassau Metals Corporation, C&D Recycling, Inc., Lurgan Corporation, Joseph Benner and American Telephone and Telegraph Company

(Addresses on Complaint)

COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  Luzerne
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT  South Carolina
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Robert J. Sugarman
Sugarman & Associates
101 North Broad St., Suite 1600
Phila., PA  19107
(215) 751-9733

ATTORNEYS (IF KNOWN)

Unknown

*(PLACE AN ☒ IN ONE BOX ONLY)*   **BASIS OF JURISDICTION**

☐ 1 U.S. PLAINTIFF   ☐ 2 U.S. DEFENDANT   ☒ 3 FEDERAL QUESTION (U.S. NOT A PARTY)   ☐ 4 DIVERSITY

*IF DIVERSITY, INDICATE CITIZENSHIP ON REVERSE. (28 USC 1332, 1441)*

**CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE)
CERCLA, 42 U.S.C. Sec. 9607, RICO, 18 U.S.C. Sec. 1962, and state law causes of action to redress injuries from toxic contamination.

*(PLACE AN ☒ IN ONE BOX ONLY)*   **NATURE OF SUIT**

**ACTIONS UNDER STATUTES**

| CONTRACT | TORTS | CIVIL RIGHTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES Cont. |
|---|---|---|---|---|---|
| ☐ 110 INSURANCE | **PERSONAL INJURY** | ☐ 441 VOTING | ☐ 610 AGRICULTURE | ☐ 420 TRUSTEE | ☐ 450 COMMERCE ICC RATES, ETC. |
| ☐ 120 MARINE | ☐ 310 AIRPLANE | ☐ 442 JOBS | ☐ 620 FOOD & DRUG | ☐ 421 TRANSFER (915b) | ☐ 460 DEPORTATION |
| ☐ 130 MILLER ACT | ☐ 315 AIRPLANE PRODUCT LIABILITY | ☐ 443 ACCOMMODATIONS | ☐ 630 LIQUOR LAWS | ☐ 422 APPEAL (801) | ☐ 810 SELECTIVE SERVICE |
| ☐ 140 NEGOTIABLE INSTRUMENT | ☐ 320 ASSAULT, LIBEL & SLANDER | ☐ 444 WELFARE | ☐ 640 R.R. & TRUCK | **PROPERTY RIGHTS** | ☐ 850 SECURITIES COMMODITIES EXCHANGE |
| ☐ 150 RECOVERY OF OVERPAYMENT & ENFORCEMENT OF JUDGMENT | ☐ 330 FEDERAL EMPLOYERS' LIABILITY | ☐ 440 OTHER CIVIL RIGHTS | ☐ 650 AIRLINE REGS. | ☐ 820 COPYRIGHT ☐ 830 PATENT | ☐ 891 AGRICULTURAL ACTS |
| ☐ 151 MEDICARE ACT | ☐ 340 MARINE | | ☐ 660 OCCUPATIONAL SAFETY/HEALTH | ☐ 840 TRADEMARK | ☐ 892 ECONOMIC STABILIZATION ACT |
| ☐ 152 RECOVERY OF DEFAULTED STUDENT LOANS | ☐ 345 MARINE PRODUCT LIABILITY | | ☐ 690 OTHER | **SOCIAL SECURITY** | |
| ☐ 153 RECOVERY OF OVERPAYMENT OF VETERANS BENEFITS | ☐ 350 MOTOR VEHICLE ☐ 355 MOTOR VEHICLE PRODUCT LIABILITY | | | ☐ 861 HIA (1395ff) ☐ 862 BLACK LUNG (923) ☐ 863 DIWC (405 (g)) | ☐ 893 ENVIRONMENTAL MATTERS |
| ☐ 160 STOCKHOLDERS SUITS | ☒ 360 OTHER PERSONAL INJURY | **PRISONER PETITIONS** | **LABOR** | ☐ 863 DIWW (405 (g)) ☐ 864 SSID Title XVI | ☒ 893 ☐ 894 ENERGY ALLOCATION ACT |
| ☐ 190 OTHER CONTRACT | ☐ 362 PERSONAL INJURY-MED. MALPRACTICE | ☐ 510 VACATE SENTENCE (2255) | ☐ 710 FAIR LABOR STANDARDS | ☐ 865 RSI (405 (g)) **TAX SUITS** | ☐ 895 FREEDOM OF INFORMATION ACT |
| ☐ 195 CONTRACT PRODUCT LIABILITY | ☐ 365 PERSONAL INJURY PRODUCT LIABILITY | ☐ 530 HABEAS CORPUS | ☐ 720 LABOR/MGMT. RELATIONS | ☐ 870 TAXES ☐ 871 IRS-THIRD PARTY 26 USC 7609 | ☐ 900 APPEAL OF FEE DETERMINATION UNDER EQUAL ACCESS TO JUSTICE |
| **REAL PROPERTY** | **PERSONAL PROPERTY** | ☐ 540 MANDAMUS & OTHER | ☐ 730 LABOR/MGMT. REPORTING & DISCLOSURE ACT | ☐ 875 CUSTOMER CHALLENGE 12 USC 3410 | |
| ☐ 210 CONDEMNATION | ☐ 370 OTHER FRAUD | ☐ 550 CIVIL RIGHTS | ☐ 740 RAILWAY LABOR ACT | **OTHER STATUTES** | ☐ 950 CONSTITUTIONALITY OF STATE STATUTES |
| ☐ 220 FORECLOSURE | ☐ 371 TRUTH IN LENDING | | | ☐ 400 STATE REAPPORTIONMENT | |
| ☐ 230 RENT LEASE & EJECTMENT | ☒ 380 OTHER PERSONAL PROPERTY DAMAGE | | ☐ 790 OTHER LABOR LITIGATION | ☐ 410 ANTI-TRUST | ☐ 890 OTHER STATUTORY ACTIONS |
| ☒ 240 TORTS TO LAND | ☐ 385 PROPERTY DAMAGE PRODUCT LIABILITY | | ☐ 791 EMPL. RET. INC. SECURITY ACT | ☐ 430 BANKS AND BANKING | |
| ☐ 245 TORT PRODUCT LIABILITY | | | | | |
| ☐ 290 ALL OTHER REAL PROPERTY | | | | | |

*(PLACE AN ☒ IN ONE BOX ONLY)*   **ORIGIN**

☒ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify)   ☐ 6 Multidistrict Litigation   ☐ 7 Appeal to District Judge from Magistrate Judgment

**UNITED STATES DISTRICT COURT**          *(Continued on Reverse Side)*

JS 44C
(Rev. 11/82)

## CIVIL COVER SHEET (Reverse Side)

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

INSTRUCTIONS: After completing the front side of form JS 44C, complete the information requested below.

| CITIZENSHIP OF PRINCIPAL PARTIES (IF DIVERSITY) | | PTF | DEF | *Check/Fill in if demanded in complaint:* | | | |
|---|---|---|---|---|---|---|---|
| CITIZEN OF THIS STATE | | ☒1 | ☐1 | ☐ CHECK IF THIS IS A UNDER F.R.C.P. 23 | **CLASS ACTION** | DEMAND $ | OTHER |
| INCORPORATED THIS STATE | | ☐2 | ☐2 | | | | |
| FOREIGN CORPORATION-PRINCIPAL PLACE OF BUSINESS IN see below* | | ☐3 | ☐3 | **RELATED CASE(S) IF ANY** | | | |
| | | | | JUDGE _____ DOCKET NUMBER _____ | | | |
| | | | | *CIVIL CASES ARE DEEMED RELATED IF PENDING CASE INVOLVES:* | | | |
| OTHER NON-CITIZEN OF THIS STATE | | ☐4 | ☐4 | ☐ 1. PROPERTY INCLUDED IN AN EARLIER NUMBERED PENDING SUIT | | | |

| *Check YES only if demanded in complaint:* | ☐ 2. SAME ISSUE OF FACT OR GROWS OUT OF THE SAME TRANSACTION |
|---|---|
| **JURY DEMAND:**   ☒ YES    ☐ NO | ☐ 3. VALIDITY OR INFRINGEMENT OF THE SAME PATENT COPYRIGHT OR TRADEMARK |

| DATE | SIGNATURE OF ATTORNEY OF RECORD |
|---|---|
| 8-31-89 | *Robert J. Sugarman /atty.    John A. Moore Jr.* |

COMMENTS (Use if additional space is required):

\* Defendants are two corporations incorporated in this State, one individual residing in this State, one New York corporation registered to do business in this State, and one corporation residing in South Carolina.

AO82 SWEDA
(3/86)

TRIPLICATE

**RECEIPT FOR PAYMENT**
**UNITED STATES DISTRICT COURT**
for the
**MIDDLE DISTRICT OF PENNSYLVANIA**

**Account Code**

| | |
|---|---|
| 100 | Deposit Fund |
| 200 | Registry Fund Treasury |
| 250 | Registry Fund Local |
| 310 | Immigration / Naturalization Fees |
| 320 | Attorney Admission Fee |
| 330 | Filing Fees |
| 340 | Sale of Publications |
| 350 | Copy Fees |
| 360 | Miscellaneous Fees |
| 370 | Interest Deposits to U.S. |
| 380 | Court Costs to U.S. |
| 386 | Restitution to U.S. |
| 391 | Contributions to U.S. |
| 392 | Misc. Gifts to U.S. |
| 400 | Crime Victims Fund |
| X600 | Unclaimed Money |
| 900 | Appropriation Repayments |

CASE REFERENCE: 3 89CV1268

**RECEIVED FROM**

John A McGie

7757 Parkview Rd.

Upper Darcy, PA 19082

**DEPUTY CLERK** _____

Checks and drafts are accepted subject to col-
lection and full credit will only be given when
the check or draft has been accepted by the fi-
nancial institution on which it was drawn.